**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
CASE NO. 9:24-CV-80612-AMC

| | |
|---|---|
| **MARY JANE WHALEN, and CHRISTINE V. RONA,** individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>**GUNSTER, YOAKLEY & STEWART, PA**<br>          Defendant. | **PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Honorable Aileen M. Cannon |

## I.     INTRODUCTION[1]

Plaintiffs, Mary Jane Whalen and Christine V. Rona ("Plaintiffs" or "Proposed Settlement Class Representatives") move for preliminary approval of the Settlement Agreement[2] they reached with Defendant Gunster, Yoakley & Stewart, PA ("Gunster" or "Defendant") (collectively, "the Parties"). The Parties have reached a proposed settlement that, if approved by the Court, will resolve the Plaintiffs' and Settlement Class Members' claims against Defendant arising from the Data Breach at issue in this Action. In support of this Motion, Plaintiffs submit herewith the Settlement Agreement as **Exhibit 1** and the Declaration of proposed Class Counsel as **Exhibit 2**.

This case arises from a Data Breach that Plaintiffs allege compromised the security of their and other Settlement Class Members' Personal Information, including, but not limited to, data

---

[1] Gunster does not oppose the relief sought by this Motion for Preliminary Approval (the "Motion") and agrees that the Court should grant the Motion. By not opposing this relief, Gunster does not concede the factual basis for any claim and denies liability. The language in this Motion, including the description of proceedings, as well as legal and factual arguments, is Plaintiffs', and Gunster may disagree with certain of those characterizations and descriptions.

[2] Unless defined, capitalized terms have the same meaning attributed to them in the Settlement Agreement, attached to Plaintiffs Motion as Exhibit "1."

that Gunster acquired from current and former employees, clients, and other persons during the ordinary course of its practice, and which Plaintiffs allege Gunster was duty bound to protect from unauthorized persons, including cyber criminals. The Personal Information affected by the Data Breach included a wide variety of information, including name, address, date of birth, Social Security number, medical or health insurance information, and other sensitive information, which in the hands of cyber criminals can result in identity theft.

## II.     SUMMARY OF THE LITIGATION

On or around November 27, 2022, Gunster determined that third-party cybercriminals had gained access to Gunster's systems (*i.e.*, the "Data Breach"). Defendant notified impacted individuals of the Data Breach beginning on or around August 2023.  On May 13, 2024, Mary Jane Whalen ("Whalen") filed a putative class action complaint against Gunster in the United States District Court for the Southern District of Florida, asserting claims arising out of the Data Breach. On August 15, 2024, Gunster moved to dismiss Whalen's complaint for failure to state a claim.  On September 17, 2024, Plaintiff Whalen filed her Amended Complaint, which, among other changes, added an additional Plaintiff, Christine V. Rona ("Rona").  On October 1, 2024, the Parties engaged in a full-day, in-person mediation session before former United States Magistrate Judge, Diane M. Welsh (ret.), a nationally recognized and experienced mediator with expertise in data breach class actions. Over the course of the day, the Parties engaged in arm's length, hard-fought negotiations, and with the assistance of Judge Welsh, the Parties reached an agreement in principle, the terms of which were later finalized by way of the Settlement Agreement and its attached exhibits.

The Settlement Agreement was executed, subject to preliminary and final approval by the Court.

III.    **SUMMARY OF SETTLEMENT**

The Settlement Agreement negotiated on behalf of the Settlement Class provides for the creation of a non-reversionary cash settlement fund in the amount of eight million five hundred thousand United States Dollars $8,500,000.00 (Settlement Amount) (the "Settlement Fund"). SA ¶ 2.39. The Settlement Fund shall be used to pay for (i) Administration and Notice Costs; (ii) the Approved Claims; and (iii) the Attorneys' Fees and Expenses. SA ¶ 3.2. The Settlement Agreement provides further that the Settlement Fund shall be paid to the Settlement Administrator as follows: (i) within ten (10) Business Days of the Preliminary Approval Order, Gunster will pay or cause to be paid $495,000.00 into the Settlement Fund Account to pay for Administration and Notice Costs, which amount will be credited towards the $8,500,000.00 total amount of the Settlement Fund (SA ¶ 3.1.1) and (ii) within ten (10) Business Days of the Effective Date, Gunster shall deposit or cause to be deposited the remaining balance of the Settlement Fund (eight million five thousand United States Dollars ($8,005,000.00)) into the Settlement Fund Account. SA ¶ 3.1.2. In no event shall Gunster be obligated to pay more than eight million five hundred thousand United States Dollars ($8,500,000.00) in connection with the Settlement. SA ¶ 3.2.

A.    **The Settlement Class**

The Settlement Class is defined as "all persons residing in the United States whose Personal Information was compromised, accessed, exfiltrated, or otherwise impacted by the Data Breach." The Settlement Class specifically excludes: (i) Gunster, any Entity in which Gunster has a controlling interest, and individuals who at any time since November 27, 2022 served as Gunster directors or officers; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the Settlement." SA ¶ 2.36.

3

### B.   The Settlement Benefits

#### 1.   Reimbursement for "Ordinary" Out-of-Pocket Losses and Ordinary Attested Time

All Settlement Class Members may submit a claim for Ordinary Out-of-Pocket Losses and/or Ordinary Attested Time up to a total of two thousand five hundred dollars ($2,500) per Settlement Class Member. SA ¶ 7.2.  The Settlement Fund will be used to pay valid and timely submitted claims for each of the following categories: (1) costs associated with accessing or freezing/unfreezing credit reports with any credit-reporting agency; (2) other miscellaneous expenses incurred related to any Ordinary Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges; and (3) credit monitoring or other mitigative costs. SA ¶ 7.2.1. Such claims will be evaluated by the Settlement Administrator as per the process set out in the Settlement Agreement.

Whether or not they incurred Ordinary Out-of-Pocket Losses, Settlement Class Members may also submit a claim for up to seven (7) hours of time spent responding to receiving notice of the Data Breach at a rate of thirty dollars ($30) per hour. SA ¶ 7.2.3.

#### 2. Reimbursement for "Extraordinary" Losses and Extraordinary Attested Time

In addition to submitting a claim for Ordinary Out-of-Pocket Losses and/or Ordinary Attested Time, Settlement Class Members who believe they have suffered identity theft, fraud, or other extraordinary losses may submit a claim for Extraordinary Losses and/or Extraordinary Attested Time up to thirty-five thousand dollars ($35,000) per individual, in the aggregate as set forth in the Settlement Agreement. SA ¶ 7.3. The total amount of compensation that can be claimed for Ordinary Out-of-Pocket Losses, Ordinary Attested Time, Extraordinary Losses and

4

Extraordinary Attested Time cannot exceed $35,000 per individual. *Id*. Such claims will be evaluated by the Settlement Administrator as per the process set out in the Settlement Agreement, which specifies that Claims for Ordinary Out-of-Pocket Losses and Extraordinary Losses shall require supporting third-party documentation. SA, ¶7.2.2 and ¶7.3.2. Whether or not they incurred Extraordinary Losses and whether or not they made a claim for Ordinary Out-of-Pocket Losses or Ordinary Attested Time, Settlement Class Members may submit a claim for up to ten (10) hours of time spent remedying identity theft, fraud, or other misuse of their information related to the Data Breach at a rate of thirty dollars ($30) per hour. SA ¶ 7.3.4. The total Attested Time ("Ordinary" and "Extraordinary" Attested Time, combined) that can be claimed cannot exceed ten (10) hours. *Id*.

### 3. Credit Monitoring Services

Settlement Class Members, regardless of whether they make a claim for reimbursement, can elect to enroll in three (3) years of three bureau identity theft protection and credit monitoring services under the Settlement Agreement that will include the following features: (1) dark web scanning with user notification if potentially unauthorized use of a Settlement Class Member's personal information is detected; (2) identity theft insurance; (3) real-time credit monitoring with Equifax, Experian, and TransUnion; and (4) access to fraud resolution agents. SA ¶ 7.4. The cost of providing the credit monitoring services described here shall be paid from the Settlement Fund.

### 4. *Pro Rata* Increase or Reduction of Approved Claims

If the total amount of Approved Claims submitted (as determined in the process set out in SA ¶ 7.5), when aggregated with Administration and Notice Costs and Attorneys' Fees and Expenses as approved by the Court, is less than the amount of the Settlement Fund, then Approved Claims shall be increased on a pro rata basis such that the total aggregate amount of Approved

Claims, Administration and Notice Costs, and Attorneys' Fees and Expenses equals (as reasonably close as possible without exceeding) the amount of the Settlement Fund. SA ¶ 7.6. If the total amount of Approved Claims submitted, when aggregated with Administration and Notice Costs and Attorneys' Fees and Expenses as approved by the Court exceeds the amount of the Settlement Fund, then Approved Claims shall be reduced on a pro rata basis such that the total aggregate amount of Approved Claims, Administration and Notice Costs, and Attorneys' Fees and Expenses does not exceed the amount of the Settlement Fund. *Id.* The Settlement Administrator shall reasonably exercise its discretion for purposes of implementing any pro rata increase or reduction provided herein to account for estimated, but not yet incurred, Administration and Notice Costs. For the avoidance of doubt, in no event shall Gunster's liability or obligation under the Settlement Agreement exceed the Settlement Fund. SA ¶ 7.6.

### 5. Payment of Approved Claims

Approved Claims will be paid via an electronic payment, or a check mailed to the Settlement Class Member. SA ¶ 7.7. Settlement Class Members will have ninety (90) days to cash the checks or electronically receive the payment, after which any uncashed checks will be void and the ability to receive the electronic payment will expire. *Id.* If the aggregate value of void checks and lapsed electronic payments makes it economically feasible, such funds (after decreasing the total by the cost of any anticipated tax reporting requirements and other ancillary expenses) will be disbursed pro rata via a second round of payments issued to those who successfully received electronic payments or cashed checks issued during the first round of disbursement. *Id.* After ninety (90) days of the second disbursement, any uncashed checks will be void and the ability to receive electronic payment will also expire. *Id.* The aggregate value of void checks and unclaimed electronic payments after the second round (or, if there is no second round

of checks, after the first round of checks) and/or remaining funds following the preparation of any required tax documents will be paid to increase the length of credit monitoring for those who elect it if possible, or if not, to the Florida Bar Foundation if approved by the Court. *Id.* However, if the second round of payments is not economically feasible, funds remaining in the Settlement Fund will be directly given to the Florida Bar Foundation, if approved by the Court. *Id.*

### 6. Information Security Enhancements

In response to the Data Breach and the Action, Gunster has further enhanced its data security infrastructure by, among other things, engaging in a comprehensive SOC II Type II review and audit; deploying a best in class EDR tool; implementing a centralized logging and monitoring solution with 24/7 third-party monitoring for log aggregation, threat detection, and response capabilities; enhancing backup solutions and disaster recovery protocols; expanding and hardening cloud environments; implementing enhanced access controls, including but not limited to a Privileged Access Management solution; enhancing application security testing; and engaging in a comprehensive review and modification of firewall rules and configurations. SA ¶8.1.

### 7. Release

As set forth in more detail the Settlement Agreement, as of the Effective Date, all Releasing Parties, on behalf of themselves, their heirs, assigns, beneficiaries, executors, administrators, insurers, predecessors, and successors, and any other person purporting to claim on their behalf, hereby expressly, generally, absolutely, unconditionally, and forever release and discharge any and all Released Claims against the Released Parties, except for claims relating to the enforcement of the Settlement or Agreement. SA ¶.14.1 The Parties expressly intend that all Released Parties, including Released Parties who are third-party beneficiaries (*e.g.*, current and former clients whose information was impacted in the Data Breach), shall have the right to directly enforce the Releases

herein. SA ¶.14.2. The Parties understand that if the facts upon which the Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes the risk of such possible difference in facts, and agrees that the Agreement, including the releases, shall remain effective notwithstanding such difference in facts. SA ¶ 14.3 The Parties agree that in entering the Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein. *Id.* Notwithstanding any other provision of the Agreement, nothing in the Agreement shall be deemed to in any way impair, limit, or preclude the Parties' rights to enforce any provision of the Agreement, or any court order implementing the Agreement, in a manner consistent with the terms of the Agreement. *Id.*

Within ten (10) Business Days after the Effective Date, proposed Class Counsel and the proposed Settlement Class Representatives shall dismiss with prejudice all claims, Actions, or proceedings that are released pursuant to the Agreement. SA ¶.14.4.

### C.    The Notice and Claims Process

#### 1.    Notice

The Settlement Administrator shall be responsible for implementing and executing the Notice Plan.  Within fourteen (14) days after the Court's entry of a Preliminary Approval Order, Gunster shall provide the Settlement Administrator with available contact information for Settlement Class Members. SA ¶10.1.

Should the Settlement be terminated for any of the reasons identified in the Settlement Agreement, the Settlement Administrator shall immediately destroy all contact information received from Gunster for Settlement Class Members. SA ¶10.2. As specified in Paragraph 3.2 of the Settlement Agreement, all costs incurred by the Settlement Administrator or otherwise relating

to providing notice to Settlement Class Members shall be paid from the Settlement Fund.  SA ¶10.3.

Subject to the Court's approval, the Parties propose a Notice Plan (Exhibit D) requiring a customary form of short notice to be mailed (and, where possible, emailed) to Settlement Class Members and a customary long form notice ("Long Notice"). Notice Plan, Exhibit D ¶ 9. The Settlement Class consists of approximately 746,000 Settlement Class Members, approximately 549,000 of which will be provided with direct notice to their last-known address.  The remainder of the class will be provided with notice through a media campaign, as described in the Notice Plan. *Id.* Verita Global, LLC ("Settlement Administrator") will establish and maintain a dedicated settlement website that will be updated throughout the claims period with the Long Notice and Claim Form approved by the Court, as well as the Settlement Agreement. Notice Plan, Exhibit D ¶18.  The Settlement Administrator will also maintain a toll-free help line, post office box, and e-mail address where Settlement Class Members may submit hard copy Claim Forms, exclusion requests and other case correspondence to allow Settlement Class Members to easily correspond with Verita. Exhibit D ¶¶18-20.

Additionally, Defendant will serve or cause to be served the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA Notice"), not later than ten (10) days after the Settlement Agreement is filed with the Court. The cost of providing notice pursuant to 28 U.S.C. § 1715 shall be paid as an Administration and Notice Cost from the Settlement Fund. SA ¶11.1.

### 2. Requests for Opt-Outs

Any individual who wishes to exclude themselves from the Settlement must submit a written request for exclusion to the Settlement Administrator, which shall be postmarked or submitted electronically no later than the Opt-Out Deadline. SA ¶ 16.1.

The written request for exclusion must:

      (i)      Identify the case name of the Action;

      (ii)     Identify the name and address of the individual seeking exclusion from the Settlement;

      (iii)    Be personally signed by the individual seeking exclusion;

      (iv)    Include a statement clearly indicating the individual's intent to be excluded from the Settlement; and

      (v)     Request exclusion only for that one individual whose personal signature appears on the request. SA ¶ 16.2.

Opt-out requests seeking exclusion on behalf of more than one individual shall be deemed invalid by the Settlement Administrator. SA ¶ 16.3. Any individual who submits a valid and timely request for exclusion in the manner described herein shall not: (i) be bound by any orders or judgments entered in connection with the Settlement; (ii) be entitled to any relief under, or be affected by, the Agreement; (iii) gain any rights by virtue of the Agreement; or (iv) be entitled to object to any aspect of the Settlement. SA ¶ 16.4. Any individual who does not submit a valid and timely request for exclusion in the manner described herein shall be deemed to be a Settlement Class Member upon expiration of the Opt-Out Deadline, and shall be bound by all subsequent proceedings, orders, and judgments applicable to the Settlement Class. SA ¶ 16.5.

**3.     Objections**

Any Settlement Class Member who wishes to object to the Settlement must submit a written objection to the Court on or before the Objection Deadline, as specified in the Preliminary Approval Order. SA ¶ 17.1.

The written objection must include:

(i)  The case name and number of the Action;

(ii) The name, address, and telephone number of the objecting Settlement Class Member and, if represented by counsel, of his/her counsel;

(iii)A statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

(iv)A statement of the specific grounds for the objection; and

(v) A statement of whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through counsel. SA ¶ 17.2.

In addition to the foregoing requirements, if an objecting Settlement Class Member intends to speak at the Final Approval Hearing (whether *pro se* or through an attorney), the written objection must include a detailed description of any evidence the objecting Settlement Class Member may offer at the Final Approval Hearing, as well as copies of any exhibits the objecting Settlement Class Member may introduce at the Final Approval Hearing. SA ¶ 17.3. Any Settlement Class Member who fails to object to the Settlement in the manner described in the Agreement, the Preliminary Approval Order, and in the notice provided pursuant to the Notice Plan shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be precluded from seeking any review of the Settlement or the terms of the Agreement by appeal or any other means. SA ¶ 17.4.

### 4.  Claims Process

The timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, make a claim or decide whether they would like to opt-out or object. The Claim Form, attached to the Settlement Agreement as Exhibit A, is written in plain language to facilitate Settlement Class Members' ease in completing it.

### D.    Attorneys' Fees and Expenses

Proposed Class Counsel shall submit a request to the Court for payment of Attorneys' Fees, expressed as a percentage of the value conferred by the Settlement on the Settlement Class, and for reimbursement of Expenses incurred in prosecuting and settling the Action. SA ¶ 18.1. Any request for Attorneys' Fees and Expenses will be filed with the Court at least thirty-five (35) days before the Objection Deadline. *Id.* If approved by the Court, such Attorneys' Fees and Expenses will be paid by the Settlement Administrator from the Settlement Fund within twenty-one (21) Business Days after the Effective Date. *Id.* Gunster agrees not to oppose any request to the Court for Attorneys' Fees and Expenses, provided such request does not exceed thirty percent of the Settlement Fund. SA ¶ 18.2.

## IV.    ARGUMENT

### A.  Legal Standards[3]

Approval of a proposed settlement is a two-step process. First, the court decides whether the proposed settlement is "within the range of possible approval," *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007), to decide "whether to direct notice …

---

[3] In addition to its substantive review of the Settlement's terms, the Court must have subject matter jurisdiction over this case.  CAFA's jurisdictional requirements are easily met here (minimal diversity, an amount in controversy exceeding $5,000,000, and more than 100 putative class members).  Moreover, CAFA's home-state controversy exception does not apply because, based on available address information, less than one-third of the Settlement Class has a Florida address.

to the class, invite the class's reaction, and schedule a final fairness hearing." 4 William B. Rubenstein, *Newberg on Class Actions* § 13:10 (5th ed. 2015). Second, at the final approval hearing, the court decides if the settlement is fair, reasonable, and adequate. *Id.*

Under Rule 23(e)(1), as amended on December 1, 2018, the Court must direct notice to the class of a class action settlement upon determining that notice is justified because the Court concludes it is "more likely than not" to finally approve the settlement and certify a settlement class. *See* Fed. R. Civ. P. 23(e)(1)(B). The amendments specify that before finally approving a settlement, a court should consider whether (1) the class was adequately represented; (2) the settlement was negotiated at arm's length; (3) the relief is adequate, taking into account the costs, risks, and delay of trial and appeal; how the relief will be distributed; the terms governing attorneys' fees; and any side agreements; and (4) whether settlement class members are treated equitably relative to each other. *Id.*

In assessing whether a settlement is fair, reasonable, and adequate, courts in this Circuit may also consider the so-called *Bennett* factors, which include: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.1984). In weighing these factors, the court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Id.* (citations omitted).

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient

use of judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006). It is with this sentiment and for these reasons that this Court has previously approved Class Settlements. *See, e.g., In re Miranda v. Waste Mgmt., Inc. of Fla.,* 2021 WL 12299676, at *1 (S.D. Fla. May 5, 2021); *See, e.g., In re Peng v. Mastroianni*, 2023 WL 5926732, at *1 (S.D. Fla. Aug. 3, 2023). Accordingly,"[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).

### B.  The Proposed Settlement is Fair, Reasonable, and Adequate

#### 1.  The Class was Adequately Represented

Adequacy of representation is an issue traditionally considered in connection with class certification and involves two questions: "(1) whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation" and "(2) whether plaintiffs have interests antagonistic to those of the rest of the class." *Ibrahim v. Acosta*, 326 F.R.D. 696, 701 (S.D. Fla. 2018) (quotations omitted). Here, the Plaintiffs have the same interests as other Settlement Class Members as they are asserting the same claims and share the same alleged injuries. Further, the record shows proposed Class Counsel worked diligently to bring this case to resolution by engaging in a full-day, in-person mediation before former United States Magistrate Judge, Diane M. Welsh (ret.), an experienced data breach class action mediator. *See* JAY Decl., Section I ¶1.

#### 2.  The Proposed Settlement was Negotiated at Arm's-Length

The Settlement resulted from arm's-length negotiations between experienced proposed Class Counsel with an understanding of the strengths and weaknesses of their respective positions in this lawsuit, assisted by an experienced former U.S magistrate judge with significant experience

14

in cyber litigation serving as mediator. JAY Decl., Section I ¶1; Section II ¶ 1.2. These circumstances weigh in favor of approval. *See, e.g., In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) (approving settlement where it "was reached in the absence of collusion, is the product of informed, good-faith, arms'-length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced mediator"); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"); *see also* Manual for Complex Litig. at § 30.42 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

Additionally, the Parties spent significant time negotiating the terms of the final written Settlement Agreement which is now presented to the Court for approval. At all times, these negotiations were at arm's length and, while courteous and professional, the negotiations were intense and hard-fought on all sides. Id.

### 3.   Plaintiffs Have Sufficient Information to Weigh the Benefits of Settlement

"The stage of the proceedings at which a settlement is achieved is evaluated to ensure that plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (citations omitted). In addition, "[e]arly settlements are favored" such that "vast formal discovery need not be taken." *Saccoccio v. JP Morgan Chase Bank*, *N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (citations omitted).

While the Parties settled relatively early in the litigation, before Plaintiffs' putative class

was certified, the Parties had sufficient information to adequately evaluate the merits of the case. The Parties exchanged significant information in conjunction with settlement negotiations that included the class size and demographics, information regarding the technical aspects of the breach, discovery of the breach and duration of the breach. Additionally, proposed Class Counsel relied on their experience presenting expert evidence and litigating the key legal issues in other major data breach cases to assist in evaluating the merits of this case. JAY Decl., ¶¶1-15. As recognized in other cases, "[i]nformation obtained from other cases may be used to assist in evaluating the merits of a proposed settlement of a different case." *Lipuma*, 406 F. Supp. 2d at 1325. Accordingly, Plaintiffs had more than sufficient information available to weigh the benefits of Settlement against further litigation. *See, e.g., Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *5 (S.D. Fla. May 24, 2019) ("the early settlement reached between the parties and the extent to which the parties were informed about the merits of their claims and defenses weighs in favor of approving the Settlement Agreement.").

### 4.  The Settlement Relief is Fair, Reasonable, and Adequate

In terms of relief offered, the Settlement is as comprehensive as nearly any other data breach settlement on record, and the specific benefits compare favorably to what has been previously approved, including:

- A sizeable, $35,000 cap on Ordinary Out-of-Pocket Losses, Ordinary Attested Time, Extraordinary Losses and Extraordinary Attested Time.

- Compensation for up to 10 hours of Ordinary and Extraordinary Attested Time.

- Three years of three-bureau identity theft protection and credit monitoring services available to all Settlement Class Members regardless of whether they make a claim for Reimbursement.

- Pro Rata Cash Payments from the remainder of the Settlement Fund to all Settlement Class Members that file a claim, through two rounds of distributions, if economically feasible.

- Information Security Practice commitments that are narrowly tailored to further enhance Defendant's cybersecurity posture.

For example, the relief made available under the Settlement compares very favorably to the relief made available to victims of large data breaches in common fund cases that has previously received approval and provides for a significantly greater recovery on a per-person basis. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *2 (N.D. Ga. Mar. 17, 2020) (describing settlement benefits made available from $380.5 million fund on behalf of 147 million class members); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2019 WL 3410382, at *23-24 (D. Or. July 29, 2019) (describing settlement benefits made available from $32 million fund on behalf of 11 million class members); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) (approving $115 million settlement on behalf of more than 79 million class members). The settlement fund also compares favorably to the relief offered in comparably sized cases. *See, e.g.,* In re Mednax Servs., Inc., Customer Data Sec. Breach Litig., No. 21-MD-02994-RAR, (S.D. Fla. Oct. 5, 2024) (approving $6 million settlement on behalf of 2,712,790 class members); *See, e.g., In re Citrix Data Breach Litig.,* 2021 WL 2410651, at *3 (S.D. Fla. June 11, 2021) (approving $2.275 million settlement on behalf of 24,316 class members); *See, e.g.*, *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 2019 WL 3183651, at *7

(D. Md. July 15, 2019) (approving $3.25 million settlement on behalf of 61,000 class members).

Proposed Class Counsel, a group with extensive experience in leading major data breach class actions, believe that the relief is fair, reasonable, adequate, and superior to many comparable settlements on record. JAY Decl., Section II ¶ 1. The Court may rely upon such experienced counsel's judgment in assessing the fairness of the Settlement. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.").

### a. The Risks, Costs, and Delay of Continued Litigation

While Plaintiffs are confident in the merits of their claims, they also understand that Defendant will assert a number of potentially case-dispositive defenses and are pragmatic in their awareness of the various defenses available to Defendant, as well as the risks inherent to continued litigation. Defendant has consistently denied the allegations raised by the Plaintiffs and made clear at the outset that they would vigorously defend the case. The Settlement Agreement avoids these uncertainties and provides the Settlement Class with meaningful and certain relief.

Due at least in part to their cutting-edge nature and the rapidly evolving law, class actions can involve some level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement. *See In re U.S. Oil & Gas Litig.*, 967 F.2d at 493. Should this litigation continue, class certification is a significant hurdle that introduces additional complexities, including the potential for denial of certification. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,* 293 F.R.D. 21 (D. Me. 2013). A settlement today not only avoids the risks of continued litigation, but it also eliminates the risk that the Court would not certify the class or certification might not be upheld on appeal, and it also

provides benefits to Settlement Class Members of the type designed to address the common repercussions which arise following a data breach.

Thus, the costs and risks of trial and appeal support a finding that this Court will likely approve the Settlement.

### b.  The Method of Distributing Relief is Effective

The settlement distribution process, developed with proposed Class Counsel's knowledge and experience overseeing the administration of dozens of data breach settlements, will be efficient and effective. Settlement Class Members can easily file claims for Ordinary Out-of-Pocket Losses, Ordinary Attested Time, Extraordinary Losses and Extraordinary Attested Time, and Credit Monitoring Services. SA ¶7. Documentation requirements are not onerous, and not even required for many benefits. *Id.*

### c.  The Terms Relating to Attorneys' Fees and Expenses are Reasonable

Proposed Class Counsel will separately move for Attorneys' Fees and Expenses in the amount of $2,550,000 to be paid from the Settlement Fund that will be set forth in the fee motion. SA ¶ 18.1. Pursuant to the Settlement Agreement, proposed Class Counsel will file their motion for attorneys' fees and expenses at least thirty-five (35) days before the Objection Deadline and Gunster agrees not to oppose any request to the Court for Attorneys' Fees and Expenses, provided such request does not exceed thirty percent of the Settlement Fund. SA ¶ 18.2. If approved by the Court, such Attorneys' Fees and Expenses shall be paid by the Settlement Administrator from the Settlement Fund within twenty-one (21) Business Days after the Effective Date. SA ¶ 18.1.

"Although there is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee, an award of one-third of the common fund is consistent with the trend in this Circuit." *Gonzalez*, 2019 WL 2249941, at *6 (internal quotations omitted and citing

cases); *see also Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third"); Theodore Eisenberg, *et al*., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 951 (2017) (empirical study showing the median award in the 11th Circuit is 33%).

While proposed Class Counsel will provide a more thorough analysis of the reasonableness of its forthcoming motion for Attorneys' Fees and Expenses, at this stage, the Court can conclude that it is likely to approve the Settlement for purposes of sending notice to the class, even if it has not yet made a final determination as to Attorneys' Fees and Expenses.

### 5.   Agreements Required to be Identified by Rule 23(e)(3)

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." There is no agreement between the Parties, except as set forth in the Settlement Agreement, including (but not limited to) the separate writing referenced in Paragraph 6.2 of the Settlement Agreement.

### 6.   Settlement Class Members are Treated Equitably Relative to Each Other

The last requirement under Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats all Settlement Class Members equitably relative to one another because all are eligible to receive reimbursement based on expenses incurred and time spent, not on any unequitable basis. JAY Decl., Section II ¶1.6; Section III.

### C.  Certification of the Settlement Class is Appropriate

The second requirement in Rule 23(e)(1) for issuance of notice to the class is a finding that the Court will "likely be able to . . . certify the class for purposes of judgment" on the proposed

settlement. Here, the Settlement Class meets the requirements for certification under Rule 23(b)(3), so the Court should conclude that issuing notice is justified.

"A class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Lipuma*, 406 F. Supp. 2d at 1313-14 (quotations omitted). The Supreme Court has held that because a class settlement obviates a trial, the district judge deciding whether to certify a settlement class action "need not inquire whether the case, if tried, would present intractable management problems," under Rule 23(b)(3). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 ((U.S.Pa. June 25, 1997). However, the settlement context demands "undiluted, even heightened, attention" to "unwarranted or overbroad class definitions." *Id*. Class certification is proper if the proposed class, proposed class representatives, and class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P 23(a)(1)–(4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where (as in this case) certification is sought under Rule 23(b)(3), the Plaintiffs must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

Because this case meets all of the requirements of Rule 23(a) and (b)(3), as set forth below, certification is appropriate.

**1. The Settlement Class Meets the Requirements of Rules 23(a) and (b)(3)**

**a. Numerosity**

Numerosity requires "the class [be] so numerous that joinder of all members is

impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). Courts require only that plaintiffs provide "some evidence of the number of members in the purported class, or at least a reasonable estimate of that number." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997). Here, Defendant identified approximately 745,636 individuals affected by the Data Breach. Numerosity is thus easily satisfied.

### b.  Commonality

"The threshold for commonality under Rule 23(a)(2) is not high." *In re Checking*, 275 F.R.D. at 659. "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009).

Here, the commonality requirement of Rule 23(a)(2) is readily satisfied because class members are joined by the common questions of law and fact that arise from the same event—the Data Breach. As alleged by Plaintiffs, the critical issues posed by this action include: (1) whether and to what extent Defendant had a duty to protect and safeguard the Personal Information of Plaintiffs and the Settlement Class Members from access to that Personal Information by unauthorized third parties; (2) whether Defendant breached that duty to Plaintiffs and the Settlement Class Members by failing to implement and maintain data security procedures and practices commensurate with the nature and scope of the Personal Information  compromised in the Data Breach; and (3) whether Plaintiffs and the Settlement Class Members were injured as a result of the Data Breach. These common issues aggregate toward the singular conduct of Gunster

with respect to the Data Breach. *See, e.g.*, *In re Countrywide Fin Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the data breach"); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F.Supp.2d 1040, 1059 (S.D. Tex. 2012) ("Answering the factual and legal questions about Heartland's conduct will assist in reaching class wide resolution.").

### c.  Typicality

The next prerequisite to certification, typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. S. Co*., 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification.") (internal quotations omitted). Simply put, when the same course of conduct is directed at both the named plaintiffs and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, the typicality requirement is satisfied for the same reasons that Plaintiffs' claims meet the commonality requirement. Specifically, Plaintiffs' claims are typical of those of the putative class because they arise from the same Data Breach and from the same legal duty they allege Gunster had to secure the Personal Information of Plaintiffs and the Settlement Class

Members, comprising a clear nexus between Plaintiffs' claims and those of the Settlement Class Members. *Hines*, 334 F.3d at 1256. Typicality is thus satisfied.

### d.  Adequacy

Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 *Newberg on Class Actions* § 3:21. Additionally, the class representatives' counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at *625–26. As noted above, the Plaintiffs are members of the Settlement Class and do not possess any interests antagonistic to the Settlement Class. JAY Decl., Section III. They each allege they provided their Personal Information to Gunster and that they were harmed because of the Data Breach. Additionally, Plaintiffs have vigorously prosecuted this case for the benefit of all Settlement Class Members by filing the underlying action, reviewing pleadings, conferring with proposed Class Counsel, and providing input in crafting and approving the Settlement. *Id*.

In addition, proposed Class Counsel are qualified to represent the Settlement Class. They have extensive experience in prosecuting data breach cases, having represented data breach victims in numerous cases across the country. JAY Decl., ¶¶1-15. In this case, they have spent considerable time investigating Settlement Class Members' injuries and claims and negotiating a well-informed Settlement on behalf of the Settlement Class. Accordingly, the Rule 23(a) prerequisites have been met.

### e.  Predominance

Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class basis, *see Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551–57 (2011), and whether the proposed class is "sufficiently cohesive to

warrant adjudication by representation," *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate in a case if they have "a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004).

In this case, the key predominating questions are whether Gunster had a duty to exercise reasonable care in safeguarding, securing, and protecting the Personal Information of Plaintiffs and the Settlement Class Members and whether Gunster breached that duty. The many common questions of fact and law that arise from Gunster's conduct predominate over any individualized issues. Other courts have recognized that these types of common issues arising from a data breach predominate over individualized issues. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 312-315 (finding predominance was satisfied because "plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over "potential individual issues based on state-law variations"); *Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and CareCentrix's alleged conduct predominate over any individualized issues"); *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state

laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class). Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems ... for the proposal is that there be no trial."). Accordingly, the common questions of fact and law that arise from Defendants' conduct predominate over any individualized issues.

### f.  Superiority

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the Settlement Class. To determine if superiority requirements are met for certification of a settlement class, courts consider: (1) the settlement class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; and (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum. See Fed. R. Civ. P. 23(b)(3). At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004) (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)).

Proceeding as a class action in this case is superior to other means of adjudication. There is no indication in this case that any Settlement Class Member wishes to litigate their claims on an individual basis. And with the high cost of litigating a case like this—requiring expert investigation and testimony to prove how and why the data breach occurred—almost certainly swamping

individual damages, individualized litigation is impracticable. *See In re Checking*, 286 F.R.D. at 659 ("The class action fills an essential role when the [plaintiffs] would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability.").

Finally, this Court is a desirable forum for this Action. It is where the case was filed and the jurisdiction where the Defendant is headquartered. Accordingly, resolution of this case through a class action settlement in this Court will achieve significant economies for the Parties, the proposed settlement class, and the court, satisfying the superiority requirement. The Court respectfully should certify the Settlement Class, as the superiority requirement, along with all other requirements Rule 23(a) and (b), is satisfied.

### D. The Proposed Class Notice Satisfies Rule 23

Under Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal." Likewise, in directing notice "to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

1.     The Notice Plan, which is attached herein as Exhibit D, satisfies the requirements of Rule 23 and due process and is designed to be the best practicable and to meet all the criteria set forth by the *Manual for Complex Litigation*. Here, a customary form of short notice is to be mailed to Settlement Class Members, and a customary long form notice will be provided on the settlement website ("Long Notice"). The Settlement Class consists of approximately 746,000 Settlement Class Members, approximately 549,000 of which will be provided with direct notice to their last-known address. Exhibit D ¶8. The remainder of the class will be provided with notice

through a media campaign, as described in the Notice Plan. *Id.* Verita will establish and maintain a dedicated settlement website that will be updated throughout the claims period with the Long Notice and Claim Form approved by the Court, as well as the Settlement Agreement. Notice Plan, Exhibit D ¶17. A toll-free help line, post office box, and e-mail address will be maintained where Settlement Class Members may submit hard copy Claim Forms, exclusion requests and other case correspondence to allow Settlement Class Members to easily correspond with Verita. Exhibit D ¶¶17-19.

The notices are clear and straightforward. They define the Settlement Class; clearly describe the options available to Settlement Class Members and the deadlines for taking action; describe the essential terms of the settlement; disclose the amount that proposed Class Counsel intend to seek in fees and costs; explain procedures for making claims, objections, or requesting exclusion; provide information that will enable Settlement Class Members to calculate their individual recovery; describe the date, time, and place of the Final Fairness Hearing; and prominently display the address and phone number of proposed Class Counsel. Exhibit 1, SA Ex. A, Ex. C and Ex. F. Thus, the notices satisfy the specific requirements of Federal Rule of Civil Procedure 23(c)(2)(B), sufficiently informing Settlement Class Members of the terms of the proposed Settlement and their available options and are the best notices that are practicable under the circumstances.

### E. Plaintiffs' proposed Class Counsel should be appointed Class Counsel.

In appointing class counsel, courts must consider (i) counsel's work in identifying or investigating claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). proposed Class Counsel have worked

cooperatively and efficiently and committed substantial time and resources to this case. This work has included (1) investigating the Data Breach, (2) researching and evaluating the appropriate legal claims to assert, (3) interviewing potential class representatives about their experiences, (4) preparing and filing a class action complaint, (5) opposing the motion to dismiss, (6) preparing and filing an amended class action complaint, (7) engaging in informal discovery with Defendant in advance of the mediation; (8) participating in a mediation session and subsequent settlement discussions, and (9) negotiating the proposed settlement, preparing the settlement documentation, and moving for preliminary approval. *See* Exhibit 2, JAY Dec., Section II ¶ 1. Because proposed Class Counsel have demonstrated their commitment to litigating these claims, the Court should appoint John A. Yanchunis, Morgan & Morgan Complex Litigation Group and Brian Murray of Glancy Prongay & Murray LLP as Class Counsel.

## V. CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members significant relief in the form of direct reimbursements for expenses incurred and time spent relevant to the Data Breach, and three bureau identity theft protection services for three years after the Data Breach, and Defendant's commitment to make information security enhancements. For these and the above reasons, Plaintiffs respectfully requests this Court grant their Motion for Preliminary Approval of the Class Action Settlement.

Dated: November 19, 2024                    Respectfully submitted,


                                            */s/ John A. Yanchunis*

*/s/ Brian Murray*

*Attorneys for* Plaintiffs *and the Proposed Settlement Class*

CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2024 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 7, 2024

By: */s/ John A. Yanchunis*

30